IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FILED
2012 FEB 17 A 10:06
CLERK
U.S. BANKRUPTCY
COURT - PGH

| | | |
|---|---|---|
| IN RE: | : | |
| LANCE CHATKIN, | : | Case No. 11-21911-TPA |
|    *Debtor* | : | Chapter 11 |
| O'NEAL STEEL, INC. and LEECO STEEL, LLC., | : : | |
|    *Movants* | : : | Related to Doc. No. 100 |
| v. | : : | |
| LANCE CHATKIN, | : | |
|    *Respondent.* | : | |

*Appearances*:   Steven T. Shreve, Esq., for Debtor
Samuel R. Grego, Crawford S. McGivaren, Jr.
   for O'Neal Steel and Leeco Steel, LLC
Robert Lampl, Esq., for General Purpose Steel, Inc., Debtor,
   Case No 11-21907-TPA

## MEMORANDUM OPINION AND ORDER

Before the Court for decision is the ***Motion for Relief from the Automatic Stay to Pursue RICO Action*** (Motion"), Doc. No. 100, filed by the Movants, O'Neal Steel, Inc. (O'Neal") and Leeco Steel, LLC ("Leeco").[1]  The Motion has been vigorously opposed by the Debtor, Lance Chatkin ("Chatkin"),  and the Parties have submitted briefs and presented oral arguments.  After careful consideration of the relevant issues, the Court concludes for the reasons stated below that the *Motion* must be granted with certain limitations.[2]

---

[1]   An identical motion was filed by the same Movants in the affiliated case of *General Purpose Steel, Inc.,* pending in this Court at No. 11-21907-TPA.  *See* Doc. No. 121 in that case.  The issues are the same in both motions and they were briefed and argued together.  A separate Order will be issued in the *General Purpose Steel* case, but this Memorandum Opinion is intended to address the motions in both cases.

[2]   The Court has jurisdiction to decide the Motion pursuant to *28 U.S.C. §1334.*  This is a core matter pursuant to *28 U.S.C §157(b)(2)(G)*.

1

## *FACTUAL AND PROCEDURAL BACKGROUND*

Chatkin is the President and majority shareholder of General Purpose Steel, Inc. ("GPS"), a company engaged in the sale of steel products. (Chatkin and GPS will sometimes collectively be referred to as "Debtors.") On January 14, 2011, prior to the filing of the Chatkin and GPS bankruptcies, O'Neal and Leeco filed a civil complaint in the United States District Court for the Northern District of Alabama at C.A. No. 11-00137-KOB (hereinafter referred to as the "RICO Action" [3]) which is the subject of the *Motion*. Named as defendants in the RICO Action are Chatkin, GPS, another steel sales company called Worldwide Steel Unlimited, Inc. ("Worldwide"), and an individual named Bruce Adelstein ("Adelstein"). Chatkin and GPS allegedly joined with Adelstein in creating Worldwide in 2009. Chatkin's Petition at Schedule B indicates he has a 95% share interest in Worldwide, which is described as a "defunct private corporation," apparently having ceased operations in April 2010. The complaint in the RICO Action sets forth a claim under "RICO" itself (i.e., the *Racketeer Influenced and Corrupt Organizations Act*, *18 U.S.C. §§1961-1968*), as well as Alabama state law causes of action for fraud, misrepresentation, negligence and wantonness, civil conspiracy, and breach of contract and warranty.

According to the allegations in the RICO Action complaint, O'Neal is a "full-line metals service center," that locates and provides requested standards and grades of steel for its customers. O'Neal alleges that its customers manufacture such quality-sensitive products as U.S. military equipment, railroad freight cars, high lift bucket trucks, and firefighting ladder trucks.

---

[3] This is somewhat of a misnomer because, as discussed *infra*, there are a number of other causes of action pleaded in that complaint as well. Nevertheless, both sides have used this as a short-hand designation for the suit pending in the Northern District of Alabama, and the Court will follow suit.

Leeco is a subsidiary of O'Neal and is itself a specialty steel supplier. The complaint goes into considerable factual detail in its allegations, but for purposes of the *Motion* it is not necessary to repeat it all here.

In its essential terms, the RICO Action complaint alleges that since 2009 Movants have bought steel on numerous occasions from Worldwide for the purpose of reselling the steel to customers of the Movants. Worldwide, in turn, obtained the steel from GPS. The purchases by Movants from Worldwide were initiated by purchase orders indicating that the steel must meet certain quality standards established by ASTM International, a widely-recognized organization that develops and publishes technical standards for products and materials, including steel. The complaint further alleges that GPS and Worldwide, through the actions of Chatkin and Adelstein, engaged in a scheme whereby they would buy low grade steel from various mills and then sell it to Movants, passing it off as higher quality steel through the use of phony or altered "certificates of conformance" and "mill test reports" that were provided to O'Neal and Leeco. For example, in one instance Movants allege they required steel having a "yield strength" of at least 50,000 psi, and purchased steel from Worldwide that was represented as having a yield strength of 52,600 psi. However, subsequent, independent testing revealed an actual yield strength of only 34,500 psi. *See Motion*, Ex. A. at ¶72.

Movants allege that before the fraud was discovered, they had resold large quantities of the steel to their customers, who had in turn incorporated it into various products. Movants claim they have been damaged in a number of ways, including the expense of recalling and testing the products of their customers which had used the inferior steel, providing replacement steel to their

3

customers, settling claims with their customers over the steel, and by a tarnished reputation that the episode has caused. Movants are therefore unsecured creditors of the Debtors, though with unliquidated and disputed claims. *See* Petition at Schedule F. Movants have not to this point filed proofs of claim.

Chatkin and GPS obtained two extensions of time to answer the complaint in the RICO Action. Then, on March 30, 2011, before they filed an answer or otherwise responded, they each filed a bankruptcy petition in this Court. That filing automatically stayed any further activity in the RICO Action with respect to those two parties, although the case continued as to the other two defendants. On May 18, 2011 an entry of default was made against Adelstein and Worldwide in the RICO Action, but no default judgments have been entered as of yet. Adelstein then filed his own bankruptcy in the Northern District of Ohio on July 13, 2011, staying any further action against him in the RICO Action. *See In re Bruce S. Adelstein and Cindy Adelstein*, Bankr. N.D. Ohio Case No. 11-16053-pmc, assigned to the Honorable Pat E. Morgenstern-Clarren.

The first activity of O'Neal and Leeco in the Debtors' bankruptcies was to file adversary proceedings in both cases objecting to discharge. In this case, *see* Adv. No. 11-2429 which objects to discharge under *11 U.S.C. §§523(a)(2)(A), 523(a)(4), 523(a)(6), 727(a)(2), 727(a)(5),* and *1141(d)(3)*. In GPS, *see* Adv. No. 11-2430 which objects to discharge under *11 U.S.C. §§ 727(a)(1), 727(a)(2), 727(a)(5),* and *1141(d)(3)*. The RICO Action complaint contains allegations which, if proven to be true, would likely be relevant in these two adversary proceedings, particularly Chatkin. For instance, there are allegations of mail fraud and wire fraud in connection with the sale of the steel, *see Motion*, Ex. A. at ¶105, of a scheme to defraud, *id.* at ¶106, and of fraudulent misrepresentations, *id.* at ¶130.

4

In Adv. No. 11-2429, Chatkin filed an answer to the complaint, denying most of the key allegations. In Adv. No. 11-2430, GPS has filed a motion to dismiss under *Fed.R.Bankr.P. 7012*, incorporating *Fed.R.Civ.P. 12(b)(6)*, for failure to state a claim on which relief can be granted. The Court has made known that further action in the two cases would be deferred until the *Motion* in this case and the similar one in the GPS bankruptcy have been decided, although no formal orders to that effect have been entered in the two adversaries.

The *Motion* itself was filed approximately two weeks after the fling of the discharge adversaries, on August 31, 2011. The Movants are seeking relief from stay so they may resume the RICO Action against Chatkin and GPS, relying on *11 U.S.C. §362(d)(1)*, which permits the Court to grant relief from stay "for cause." [4]

Before turning to a discussion of the merits of the *Motion*, it is important to note a further development in the Adelstein bankruptcy case that has occurred since the *Motion* was filed. On October 12, 2011, O'Neal and Leeco filed a similar motion for relief from stay in that case so that they could pursue the RICO Action as to Adelstein. That motion was granted on November 17, 2011, but only to allow them to proceed so far as to liquidate their damages against Adelstein. In order to collect or enforce any judgment they may obtain against Adelstein in the RICO Action, O'Neal and Leeco must return to the Northern District of Ohio bankruptcy court.

---

[4] The statute provides in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

## *DISCUSSION*

As previously indicated, the *Motion* has been thoroughly briefed and argued by the Parties. The Parties agree that any decision on the *Motion* is discretionary with the Court and should be based on application of a "balance of hardship" test, though they obviously disagree as to where that balance ultimately lies.

While the Court routinely considers motions for relief from stay to allow some outside litigation to proceed, such motions usually involve a secured creditor that is seeking to foreclose on, or repossess, collateral. Occasionally a motion for relief from stay is brought by an unsecured creditor pursuing a debtor as a nominal defendant in a case where there is insurance available to provide a defense and indemnify the debtor. The unusual feature of the present case is that the Movants are unsecured creditors and apparently there is no insurance defense or coverage available to the Debtors. The issues then are first, whether there can ever be "cause" for relief in such circumstances, and if so, whether the facts of the present case warrant such relief.

As to the first issue, *Section 362(d)(1)* does not define "cause," leaving courts to consider what constitutes cause based on "the totality of circumstances in each particular case." *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997). There is certainly no overt prohibition in the statutory language against granting relief from stay to an unsecured creditor. In fact, as the *Wilson* court noted, the legislative history behind *Section 362(d)(1)* contemplates that an unsecured creditor may sometimes be granted relief from stay:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would

> result, in order to leave the parties to their chosen forum and to relieve the
> bankruptcy court from many duties that may be handled elsewhere.

116 F.3d at 91 (quoting S.Rep. No. 95-989 at 50 (1978), reprinted in 1978 *U.S.C.C.A.N.* 5787, 5836). Thus, the relief which the Movants seek is at least potentially available, and the question becomes whether the particular facts of this case justify relief from stay.

Before looking at those facts, it will be helpful to consider the general approach taken by other courts when faced with this same type of issue. In that regard, as the Court advised the Parties at the most recent argument on the *Motion*, it finds *In re Chan*, 355 B.R. 494 (Bankr. E.D. Pa. 2006), to provide a useful summary of the relevant case law, and the Court draws upon it in formulating the approach it will follow here.[5]

As the *Chan* court noted, the overall "test" that most courts apply in this situation may best be characterized as a "balancing of the harms," and courts require the demonstration of some "special circumstances" before stay relief will be granted to an unsecured creditor. This special circumstance requirement helps insure that stay relief to unsecured creditors does not become routine, thereby hindering the policy behind the automatic stay of giving the debtor a respite from the time and expense of responding to litigation initiated by creditors. As one court explained:

---

[5] Unlike the present case, the *Chan* decision included as an issue the potential non-discharge of a claim pursuant to *11 U.S.C. §523(a)(19)*, which deals with claims arising from the violation of federal securities laws and which some courts have treated as *sui generis* in that it requires all liability and discharge determinations thereunder to be made in a non-bankruptcy forum. However, after a thorough discussion, the *Chan* court rejected that view and applied "ordinary principles which guide a bankruptcy court's decision on the subject [of relief from stay to an unsecured creditor]".

7

> "Cause" is an intentionally broad and flexible concept which must be determined on a case-by-case basis. Indeed, there are a multitude of reported decisions discussing relief from the stay for "cause," all of which are fact intensive and generally offer no precise standards to determine when "cause" exists to successfully obtain relief from the stay. A court may consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties. Unsecured creditors are generally entitled to relief from an automatic stay only in extraordinary circumstances.

355 B.R. at 499 (quoting *In re Brown*, 311 B.R. 409, 412-13 (E.D. Pa. 2004)). Thus, while the decision whether to grant stay relief to an unsecured creditor is discretionary, a bankruptcy court should proceed with caution in this sort of case.

The *Chan* court also explained that a number of courts have developed lists of factors to be considered as an aid in deciding whether to grant stay relief to an unsecured creditor for cause. *See, e.g., In re Granati*, 271 B.R. 89, 93 (Bankr. E.D. Va. 2001) (listing four factors), and *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (citing *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984), and listing a dozen factors). Given the highly fact-specific nature of the inquiry, it is perhaps not surprising that the Court finds the construction of any such list of factors somewhat artificial, and the lists provided in the cited cases include many factors of no relevance here. Nevertheless, there are a number which the Court does believe ought to be considered, directly or in a modified form, in reaching a decision in this case. For instance:

- whether judicial economy will be promoted
- whether the outside litigation will interfere with the bankruptcy case
- whether the litigation will result in a partial or complete resolution of the issues
- the involvement of third-parties

- Whether the estate can be protected by a requirement that creditors only seek to enforce any judgment obtained through the bankruptcy court

- what stage the other litigation has reached

The Court will consider these factors in the overall "balance of harm" inquiry, without handcuffing itself by ignoring other factors it deems relevant, or proceeding as if the decision is one that can be reduced to "score-keeping or bean-counting." *Chan*, 355 B.R. at 500 (quoting *Kerusa Co., L.L.C. v. W10Z/515 Real Estate Ltd. P'ship*, 2004 WL 1048239 (S.D.N.Y. 2004)).

Before moving on, the Court must also comment on the proper burden of proof to be applied in this matter. The statute itself provides that in any hearing under *Section 362(d)* requesting relief from stay, the moving party has the burden of proof on the issue of equity in the debtor's property but the party opposing such relief has the burden of proof on "all other issues." *See 11 U.S.C. §362(g)*. The first part of that formulation is not applicable here because the stay relief being sought by O'Neal and Leeco does not concern any property. Does that then mean that the Debtor, having the burden as to all other issues, must prove a lack of cause? Although that approach might follow from a literal reading of the statutory language, it is not the way that courts have applied the statute in actual practice. Instead, courts have placed the burden on the moving party to make an initial *prima facie* showing of "cause" sufficient to support relief from stay. If the moving party does so, the ultimate burden then shifts to the non-moving party, here the Debtors, to show a lack of cause to grant stay relief. *See, e.g., In re White*, 430 B.R. 195, 200 (Bankr. W.D. Va. 2008) (citing authorities), *In re Rocco*, 319 B.R. 411, 419 (Bankr. W.D. Pa. 2005); B. Russell, *Bankruptcy Evidence Manual* (2011-2012 Ed.) Rule 301, §301:44 pp. 275-276.

The Court now turns to the merits of the *Motion*. If granted relief from stay, the Movants propose to move forward with the RICO Action as against Chatkin and GPS, hoping ultimately to obtain a judgment against them in the Northern District of Alabama, with factual findings and a liquidation of their damage claim against the Debtors. Movants have agreed in advance that they would not make any effort to enforce such judgment in the District Court. Instead through *res judicata* principles they would rely on the judgment in the proceedings in this Court, presumably to establish the amount of their claim, and to establish that any debt owed to them by the Debtors should be found to be non-dischargeable.[6]

Movants concede that determinations as to the amount and the dischargeability of their claims *could* be made in this Court.[7] Their argument is that it makes more sense, however, for this Court to in effect defer to the District Court and allow it to take the lead. They make a number of points in that regard. They say that the elements at issue in the RICO Action are very close to the elements at issue in the discharge adversaries and the use of findings from the RICO Action by this Court could be a valuable tool for an efficient and inexpensive resolution of the discharge adversaries.

---

[6] Movants' plan, of course, is premised on the assumption that activity in this Court on the discharge adversaries will come to a temporary halt while matters are resolved in the RICO Action, and then restarted if and when the Movants obtain judgments against the Debtors in the District Court. If it were otherwise, a grant of stay relief could lead to active, ongoing parallel litigation in both courts, something all Parties can no doubt agree should be avoided. Movants have not to this point, however, filed a motion asking that the discharge adversaries be stayed.

[7] Actually, Movants did raise in their filings that the jury trial demand they made in the RICO Action and a Constitutional issue based on the holding in *Stern v. Marshall*, __ U.S. __ , 131 S. Ct. 2594 (June 23, 2011), serve as impediments to this Court's ability to make those determinations. Those issues were significantly downplayed, if not outright abandoned, by the Movants at the oral argument on the *Motion*. In any event, given the decision to grant relief from stay, the Court need not address those issues at this time.

It is undoubtedly true that if the RICO Action were litigated and findings of fraud were made against the Debtors such findings would likely be conclusive in the discharge adversaries, to a large extent thus saving this Court from having to engage in the fact-finding process itself. The Debtors do not seem to seriously contest that point. Nevertheless, it is far from clear that a deferral to the District Court would on the whole be likely to facilitate an efficient and inexpensive resolution of the discharge adversaries here. The RICO Action is only in its opening stage, as least as concerns Chatkin and GPS, and it could conceivably drag on for a long time before any decision is made, delaying this case in the meantime. Thus, on balance, the Court does not find this point to provide much weight on the issue of cause for relief from the stay.

The Movants also argue that the stay should be lifted to prevent the RICO Action from in effect being split, with the case proceeding as against Worldwide and Adelstein in the District Court, while the same issues are tried in this Court as against the Debtors. They contend that allowing such a split in the litigation would be extremely detrimental to them for several reasons. For one thing, they argue it would mean they have to litigate the same issues in two different courts, resulting in duplicative litigation that would waste the resources of the Parties and the federal court system.

Movants further assert that a split litigation would enable each "set" of defendants to point the finger of blame at the "empty chair," without the respective court obtaining a full picture. In other words, the Debtors could defend in this Court by attempting to minimize their role in the dealings with Movants and maximizing the role of Adelstein, while he could do the reverse

in the RICO Action.[8] The contention is that unless one tribunal has all of the defendants before it a full picture will not be presented, and since this Court has no jurisdiction over Adelstein and Worldwide, the matter should perforce be heard by the District Court.

A related, third reason advanced by Movants for strongly disfavoring a split litigation is the very nature of the RICO statute. Movants note that RICO has a very broad jurisdictional reach which permits defendants in different jurisdictions to be "gathered in one forum," thus preventing a "fragmented situation" such as Movants contend will occur here if they are denied stay relief.

The Court finds this latter group of reasons for lifting the stay to be much more compelling. On an overall view of judicial economy, it does make sense for claims arising from the relationship between Movants, on the one hand, and GPS/Chatkin/Adelstein/Worldwide, on the other hand, to be tried, if possible, in one forum rather than two. Not only would that eliminate the need for two litigations of the same issues, it would also prevent the possibility of inconsistent judicial outcomes, something which is always a concern.

Furthermore, it is clear that one of the policies behind RICO is to enable a plaintiff to bring all members of an alleged RICO conspiracy before a single court in a civil action, as reflected in the nationwide service of process provision in *18 U.S.C. §1965(b)*. *See, e.g., Estate of Carvel, ex. rel. Carvel v. Rose*, 566 F.Supp. 2d 342, 350-51 (D. Del. 2008) (once minimum contacts

---

[8] Movants have identified some instances where they say this sort of thing has already happened. *See* the GPS *Motion to Dismiss* in the discharge adversary, Adv. No. 11-2430 at Doc. No. 6 ¶8 (complaint fails to set forth a cause of action as to GPS because alleged acts were committed by Adelstein and Worldwide); and Adelstein's Answer to Complaint in the discharge adversary, Adv. No. 11-1297, filed by Movants in the Adelstein bankruptcy pending in the Northern District of Ohio, Doc. No. 24 ¶21 (characterizing GPS and Chatkin as the responsible parties).

established as to one defendant, *Section 1965(b)* enables a plaintiff to bring all members of a RICO conspiracy before a single court where ends of justice require). The ends of justice requirement screens out situations where all of the defendants would be subject to suit in another jurisdiction. For instance, if all potential defendants were subject to suit in California, and one of them was also subject to suit in New York, a RICO plaintiff could not bring suit in a New York federal court and use the nationwide process provision to bring all of the defendants within that action. The key thus seems to be that RICO was intended to insure that plaintiffs damaged by a conspiracy covered under the statute would have at least one forum available where they could bring all of the alleged conspirators together in a single action. *See, e.g., Butcher's Union Local No. 498, United Food and Commercial Workers v. SDFS Investment, Inc.*, 788 F.2d 535, 539 (9th Cir. 1986) (Congress intended the ends of justice provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial).

It is clear that the distinguishing and decisive feature in this case is the existence of parties defendant other than the Debtors in the RICO Action. Were it just Chatkin and GPS as defendants in that case, the Court would have little difficulty concluding that they had failed to meet their *prima facie* burden of showing cause for relief from stay to be granted. Given the very early procedural stage of the RICO Action, and the minimal advantage to be gained by being able at some point to potentially use findings from that court to streamline the dischargeability issues in this Court, there would not have been sufficient evidence to convince the Court that cause had been shown.

Similarly, had the court in the Adelstein bankruptcy denied Movants relief from stay as to the RICO Action, the Court would have had a much easier decision here. In that circumstance,

13

nothing this Court did would change the fact that there was going to be a split litigation – either split three ways if this Court denied relief from stay (between this Court, the Northern District of Ohio Bankruptcy Court, and the Northern District of Alabama), or two ways if this Court granted relief from stay (between the Northern District of Ohio Bankruptcy Court and the Northern District of Alabama). However, since the Adelstein court has already granted relief from stay to the Movants, a similar grant of the *Motion* here would avoid a split and allow all of the alleged conspirators to be brought before a single court, thus furthering the intent of RICO and preventing the other negative consequences that would flow from a split litigation.

The Court in the *Chan* case ultimately denied the unsecured creditor's request for relief from stay to pursue securities fraud litigation which had been commenced pre-petition in the Eastern District of Pennsylvania. However, that outside litigation was a one party-on-one party matter and that fact was an important consideration in the decision. The *Chan* court somewhat presciently noted that when there are multiple parties involved in the non-bankruptcy litigation, considerations of judicial economy may support the return of the litigation to the other forum. 355 B.R. at 501. This Court agrees, and under the specific facts of the present case, as discussed above, finds that the Movants have shown special circumstances and met their burden of showing *prima facie* cause under *Section 362(d)(1)*.

That finding does not end matters, it shifts the burden to the Debtors to rebut the *prima facie* case and in effect show a lack of cause for granting relief from stay. In that regard, the Debtors rely on what they contend will be the additional cost to the bankruptcy estates if they are

required to litigate the RICO Action. They argue that such increased cost imposes a burden on them which outweighs the burden that the Movants will face if stay relief is denied, thus tipping the balance of harm in their favor.

The Court is certainly sensitive to the cost issue and considers it an appropriate factor for consideration. The problem for the Debtors is that they have presented nothing from which to quantify or even roughly estimate what costs might be involved in defending the RICO Action, and whether and by how much such costs are likely to exceed the cost involved in defending many of the same issues in the discharge adversaries pending in this Court. Instead, Debtors merely throw out the issue of cost with nothing further and apparently expect that will be sufficient to carry the day.

While it does seem intuitively likely there will be <u>some</u> increased cost if stay relief is granted, the Court does not believe it is in a position to conclude that the magnitude of such increase would be sufficient to justify a finding that it outweighs the detriment to the Movants if stay relief is denied. For instance, in *In re Glunk*, 342 B.R. 717 (Bankr. E.D. Pa. 2006) the court stated that it was "not readily apparent" that a defense of a dischargeability adversary proceeding would be "appreciably more economical" for the debtor then the defense of a pending state court action. *Id.* at 741. The court noted its expectation that the resolution of the discharge issues in the adversary proceeding would itself require a lengthy trial, not some "mini-trial" as the debtor suggested. Likewise, in the present case, if stay relief is denied the same potentially complex issues as in the RICO Action would need to be tried here, and the Court can easily foresee extensive discovery and an involved trial in that matter.

15

In addition to cost, Counsel for GPS also argued that if relief from stay is granted the Debtors will somehow be foreclosed from litigating the dischargeability of any debt they may owe to Movants. Counsel stated that "I think the foregone conclusion here would be if relief from stay is granted there will be some form of default [in the RICO Action]." *Audio Tr. of January 23, 2012 Hearing* at 11:33:30. Counsel went on to lament that if such a default were entered against the Debtors in the RICO Action, in his estimation, any possibility of a defense by them in the discharge adversaries in this Court might be "virtually a nullity." *Id*. at 11:33:57. Counsel was apparently referring to his view as to the *res judicata* effect of such default judgment.

It is, of course, for Chatkin, GPS and their attorneys to decide what strategy they will pursue in defending the RICO Action. In deciding this *Motion*, the Court ordinarily would not speculate as to what the Debtors may choose to do and will not do so here. However, since Counsel raised the issue, in considering the effect of "cost" when weighing the "balance of hardship" factors, the Court finds itself compelled to also consider the consequences of a decision allowing a default judgment to be entered in the RICO Action.

Since the RICO Action is in a sister federal court exercising federal question jurisdiction, it appears the issue preclusion effects in this Court of a judgment entered there would be governed by federal law, not the law of Alabama. *See*, *Peloro v. U.S.*, 488 F.3d 163, 175, n.11 (3d Cir. 2007). Under federal law, for collateral estoppel to apply: (1) the issue sought to be precluded must be the same as an issue in the prior action; (2) the issue must have been actually litigated in the prior action; (3) the issue must have been determined by a valid final judgment; and, (4) determination of the issue

16

must have been essential to the judgment in the prior action. *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997).

As a "general rule" under federal law, any issue raised in a case where a default judgment was entered is not "actually litigated" for purposes of collateral estoppel, and therefore does not bar litigation of the issue in the second federal court. *See*, *In re Masdea*, 307 B.R. 466, 473 (Bankr. W.D. Pa. 2004). Some caution must be exercised because this general rule applies to a "typical" default judgment where a defendant does not participate because of the inconvenience of the forum selected or the expense of defending the lawsuit. An exception to this general rule exists where the defendant participates extensively in the lawsuit but deliberately prevents a resolution of it and a default judgment is entered against it as a sanction for refusing to comply with valid court orders. *Masdea*, 307 B.R. at 473, citing *Doctoreff*, 133 F.3d at 215.[9]

The Court thus concludes that the Debtors have failed to overcome the showing of cause made by the Movants. There is no basis for determining whether there is likely to be an appreciable quantitative difference in cost if relief from stay is granted and an active defense in the RICO Action is made by the Debtors. Furthermore, even if the Debtors choose not to defend the RICO Action because of cost constrictions or for some other reason, options may be available to the Debtors to do so, while possibly retaining the ability to meaningfully raise relevant issues in this Court without the bar of collateral estoppel. Since the Movants have made a prima facie showing

---

[9] The Court is, of course, expressing no view whatsoever as to how it would rule in the future as to any question that may come up concerning the *res judicata* effect of any judgment entered in the RICO Action. Such a decision would depend on facts that have not yet even occurred and would only be made after both sides were given an appropriate opportunity to argue their positions.

of the existence of cause for relief from stay, the burden of proof rests with the Debtors. Since the Debtors have failed to preponderantly meet their burden of proof, the *Motions* must be granted.

*AND NOW*, this **17th** day of **February, 2012**, for the reasons stated above, it is **ORDERED, ADJUDGED and DECREED** that,

(1) The ***Motion for Relief from the Automatic Stay to Pursue RICO Action*** is **GRANTED**, subject to the limitation as set forth in Paragraph 2.

(2) The Movants may proceed in the RICO Action, Northern District of Alabama at C.A. No. 11-00137-KOB , only to the point of liquidating their damages and obtaining a judgment against the Debtor. Any attempt to enforce, collect, or otherwise implement such judgment remains subject to the automatic stay provision of *11 U.S.C. §363(a)* and further order of this Court.

(3) ***On or before March 2, 2012,*** the Movants shall file an appropriate motion seeking to stay any further activity in the discharge adversary, Adv. No. 11-2429, pending the conclusion of the RICO Action as permitted by this *Order*. If no such motion is timely filed, the said discharge adversary shall proceed forward notwithstanding the grant of relief from stay as set forth herein.

*/s/ Thomas P. Agresti*
Thomas P. Agresti, Chief Judge
United States Bankruptcy Court

Case administrator to serve:
  Samuel R. Grego, Esq.
  Steven T. Shreve, Esq.
  Robert Lampl, Esq.
  Lance Chatkin, Debtor
  GPS, Debtor